May it please the Court, I'm Dana Karasvong for Deputy United States Marshals Ryan Godec and Tristan Martin. As four circuits have now held, cases involving the Marshal Service's execution of arrest warrants arise in a new context under Egbert, and there are special different legal mandate with a different mission. The federal state cooperation is key to that mission. As the 11th Circuit recognized in Robinson, this is a distinct statutory scheme under which the state and federal officers operate where they need to cooperate. And as the 10th Circuit said... Excuse me, in terms of the 4th Circuit, are we limited to because they're not the same officers that were in Divens? Because the U.S. Marshals, that's the reason? For one of them, first context. Is that solely the reason? Have we extended to other federal law enforcement officers? This Court has extended to other federal law enforcement officers in Hicks, for example, but here there's really a material difference, right? Abbasi says the new context inquiry is easily satisfied and where we're talking about this unique, this federal state cooperation, which was not considered in Divens as the 10th Circuit, for example, acknowledged. And it's really central to the mission of the Marshal Service to apprehend, to execute warrants on the most dangerous fugitives. So in every case, law enforcement officers are essential to their work to enforce the law and do so in executing warrants and arrests and park officers. What about correctional officers in prison? Were there 4th Circuit cases in that, recent cases? Well, there's certainly fields, Your Honor. We take each of these cases after Egbert on their own facts and the context matters. But I would just read you the first one, the mere fact that the U.S. Marshals certainly, I'll for sure, if a correctional officer is included, I don't think there's much delta between the U.S. Marshal, you know, and other federal officers in terms of new context. We found that was not a new context solely because it was a correctional officer, right? Your Honor, in fields, the new context argument had been waived, but there, you know, the court noted in a footnote that if it was similar to something, it was similar to Carlson. Here, what we're talking about, so the court in that case didn't decide whether it's a new context, because that argument had been waived. But here, we're talking about this cooperation between the different agencies. We're also talking about execution of a warrant, which is- How is that relevant, though, that the fact that they were doing it in conjunction, why does that make it a new context? It's the same field officers doing the same type work. Do you think that makes it a difference? Because there were local officers with them? Yes, Your Honor. So legal liability really matters in putting together these partnerships. The Capital Area Task Force has partnerships with over a hundred different agencies, just that, just that. And when we're talking about putting together these partnerships, what we know is that the state and local officers, if they are subject to liability under Bivens, you know, the federal government doesn't provide the same indemnification as of right, as that a lot of state and local departments do. So it's a, it's a different situation. And as the Sixth Circuit said, the Tenth Circuit said, the Eleventh Circuit said, it will chill recruitment to have, um, to have this liability. And, you know, of course, as the Supreme Court said, if there is any reason, even one, to think that this is a situation where Congress might be better suited to decide if there's a damages remedy, then, um, then the court can't create a damages remedy. Can you explain? So, so Bivens, it sort of involved an agency that doesn't exist anymore. But, um, do you agree that if it was the FBI and they were enforcing, say, um, you know, various federal statutory violations, um, that the fact that it was the FBI and not a drug agent, um, that that would not create a new, um, factual scenario, that distinction alone? Well, Your Honor, after I agree, we look at each of these cases on its own. And I'm asking you this particular fact, right? So I got instead of Bivens, um, the only, everything else in Bivens is the exact same, except, um, the agency is the FBI, uh, and the statute being investigated is 922 G, um, instead of, um, whatever they were investigating in, in Bivens, right? So it's a different statute and a different agency, but they are similarly doing everything else, um, the same. Do you, do you think in that hypothetical, it's obviously hypothetical, um, that that necessarily creates, um, a new context? Well, the Ninth Circuit said that the FBI was a new context. The, uh, Seventh Circuit said that it was not. I can't answer that question here. What I do know is that, so, uh, uh, all right, fine. Um, except hypothetically that that would be the same Bivens context. Help me understand why, um, the U.S. Marshals when they're, uh, assisting with the arrest of, of state fugitives, um, that that is not sort of analogous there. So if you assume for a minute, hypothetically, um, that an FBI agent enforcing a gun law is not a different context from a, uh, drug agent enforcing a drug law. Um, why is the U.S. Marshals work, uh, meaningfully different? Yes, Your Honor. It's meaningfully different because as the Eleventh Circuit said, the Marshal Service operates under this distinct statutory scheme where state and federal officers have to cooperate to apprehend these fugitives, the most, most dangerous fugitives in the United States. It's more like immigration type work because you've got sort of like different, um, you know, interest at state federalism interests at state. Yes, there are different federalism interests at stake when you talk about these cooperation agreements. And of course the legal liability matters in putting together these kinds of cooperation agreements, which is a reason to think that Congress, uh, would be better positioned. There's also the presence of a warrant, a state warrant. You know, this court said in Nixon and Peretti that execution of a warrant created a different context and there are special factors. The warrant doesn't matter in this case though, does it? They weren't, they had a warrant, but the warrant is really, really not the focus here, right? They were in the house. It wasn't based on the warrant. They were in the house at the permission of the homeowner. Am I wrong? Well, they were in the house to execute the warrant. No, no, no. They were in the house because the person let them in. When, for example, when, when the question was to the door, the person who asked the door, is this person here for whom we have a, a warrant for arrest? The answer was no. Am I right? The answer was no. You are right that she said no and they were not in. Then they said, well, can we come in and look for him? And they said yes. And they told them you need to get outside, outside of your home and they left. That was all at the been at the benefit or the graciousness of the homeowner. That wasn't a warrant. They were there, they were in the house because they were given permission to be in there. You do agree that an arrest warrant doesn't give you the right just to go in someone's home. Anybody's home said, I don't care, right? You think an arrest warrant would allow you to just search someone's home? If they said, if they had said no, you can't come in my house. I'm asking you, you're a lawyer. Can they, would that allow you an arrest warrant? Do they do that? Your Honor, what I know about arrest warrants is that they do give some authority to go into a home and look for the, for the suspect. Under work circumstances, they got to have a reason to believe that he's in there. Right. Which they did in the denial by the person at the front door isn't necessarily, um, defeat the ability to use an arrest warrant to look in somebody's house, right? Because for example, you hear noises, you hear disturbances, there are other physical examples. You saw them peeping through the window. They just arrived to our before some factual circumstance, but you just can't say I'm coming to your house. The point that they allowed, they allowed them to come in. That's undisputed. They did allow the officers. That's what I said. They allowed the warrant was not, the warrant does not permit it. She permitted it. So were they invited into the downstairs? Were they given consent to go into the downstairs? I don't believe they, I don't believe the record shows that they asked separately about the downstairs. I mean, it was separated off by a door that wouldn't open. That's right. You're right. And so they, they broke the door down and, and send a dog in that they received consent to do that. I, they did not ask separately to do that. As far as I'm aware, the other reason that they had reason at that point to believe that the fugitive was downstairs, they had reason to believe he was in the house. I think the record shows that they had, they had been, they had no, they knew his truck was outside. They had been looked at the residents, but the other key about the warrant is that it was a pregnant woman in there. I'm not pregnant with a woman with a four month old baby in there. There have been no fact findings on that. No, no, no. The facts at this point are disputed. That's what the district court said. The sister said, I told them that she was there and the baby, right? Yes. So now we're supposed to now ignore that at this point. Don't we have to assume that's correct? The facts you do assume those facts so that you have to then at this stand that they did that, they put that dog in there knowing that having told her a four month old baby and mother was there in that room and they put a dog in there and the dog bites to kill. I don't know that the dog bites to kill. What kind of dog was it? You don't even know. I, I'm sorry, your honor. I don't know. The dog was trained to bite the whomever they, they came in contact with. Right. And here they put flesh, a hunk of flesh out of her thigh. Yes, your honor. So the warrant shows that there's judicial involvement, right? There was probable cause to believe that Trinidad had committed a violent felony, which gave them to go into the home and look for him, this court. And Hicks said that Bivens involved a claim grounded in a right to be free from warrantless searches and seizures, which is distinguished from one that is authorized by a warrant. Of course, there's also qualified immunity here, but we don't need to get to that because this is a new context given. Can I ask you about the new, the category of defendant? You were talking with Judge Richardson about, you know, FBI and then between the marshal service generally and the fugitive apprehension task forces, or, or should we just consider that all as just the marshal service is a different category or are the task forces the category you're talking about? You, you could do it either way, your honor, but our argument does rely on the task forces and this cooperation is one of the from Bivens and that is the factor that the second circuit, well, the second circuit didn't have a lot of analysis. That act of Congress in 2000 is what created this federalism issue. Is that right? So the marshal service operated with cooperation before that, but the act of 2000 certainly is something that both the 10th and the 11th circuits found to be compelling because the, marshal service really does depend on that cooperation, which is those courts have said would be, would be chilled. Um, if there are no further questions, I'll remain reserve the remainder of my time. All right. Some alone. Thank you, your honors. And may I please support. I'd like to address several of the questions that the court proposed to appellants council. First of all, as far as new categories of defendants, this court pretty, uh, conclusively addressed this question just 22 months ago in Hicks too, when the court decided that extending it to the United States park police and the fourth amendment context, uh, was not a quote context for billings purposes. Uh, and this, uh, essentially what the pellets are asking the court to do is revisit and change that analysis. And of course, in fields, uh, the court recognized that it could also be the Bureau of prisons. We don't think we have to rely on fields here because we think Hicks is very analogous and what the court said. And that was a traffic stop. That was fourth amendment seizure in Hicks, similar to fourth amendment here. What's slightly different is we have excessive force, but excessive force has long been a fourth amendment. Excessive force claims as part of a seizure have long been a part of the analysis of Billings claims and have long been recognized as that. I want to talk a little bit about, and the only, as far as new agencies or expansion, the only time the Supreme Court has recognized it is in the correctional context. When the Supreme Court decided probably appropriately not to extend it to private correctional corporations, there has not been a situation where the Supreme Court has said, well, just because in Bivens it was this agency, it can't be another agency. You know, Egbert is, is kind of hard to parse that way, isn't it? It's a, the court says we've typically kind of asked two questions, but then in Egbert they say it really all boils down to one question, even though we say new context and factors counseling hesitation. It's really just one question. Is there any reason to think Congress might be better equipped to create a damages remedy? And then they turn around and say, in most every case, there is a rational reason to think that Congress should decide whether to provide a damages remedy. So that doesn't seem to leave us much room at all, does it? Well, no, but that has to be read in the context of the decision in 2017 that there's still good law in Albusy. And in that particular case, the Supreme Court outlined seven, in Ziegler rather, the Supreme Court outlined seven different factors that we have to look at. And those seven different factors included the rank of the officers involved, the constitutional rights at issue, the generality or specificity of the official action, the extent of judicial guidance, the problem or emergency to be confronted, the statutory or legal mandate under which the officer was involved, the disruption of the judiciary and of the function of the other branches, and the presence of other special factors that Bivens did not consider. That's good law in Ziegler. And we have cited on pages 19 and 20 of our brief a long list of cases where federal courts, including the Sixth Circuit, as well as district courts, have recognized that the cases, that Fourth Amendment cases involving United States marshals are not a new context. And if we, and the trial court very carefully in this case, applied all of the Ziegler factors, these were low-lying officers, the constitutional rights at issue, the Fourth Amendment seizures were well in hand and well described, the specificity of the official action was quite specific. As far as the extent of judicial guidance, these are basically settled questions of law. The legal mandate in which they were operating, we've talked a little bit about, and I'd like to address the task force issue. And there's no risk of disruption of the judiciary into the of the other branches, as there might have been in Egbert because of issues involving border issues, or there might have been in Hernandez because of border issues or other cases. Or Ziegler, where there was a terrorism issue. Why don't we think about this sort of cooperative federalism, right? The federal government assisting the state in the enforcement of its laws to be more analogous to the sort of immigration cases where we're dealing with the relationship between different sovereigns that the court says, like, precluded recognizing of biventrimity. Why wouldn't we think about the sort of relationship between the federal government and the states in an analogous way? I understand that they are not the same, but they're analogous in that we're dealing with the relation between different sovereigns. Well, because the public policy issue here, what the government has cited in these other cases, a quote, chilling effect that was cited in the Tenth Circuit. But here we have the opposite effect, because every other member of the task force that was not federal had liability here, had Bivens-like liability. The local government officers, the Prince George's County Sheriffs, were subject to the Maryland Local Government Tort Claims Act, as well as 1983 liability. And they would have had liability had they been the actors in this case. The other state members. That might or might not be true. We can debate that. But go back to my question, which is like, we're not addressing those folks right now. What we're asking is, like, is it sort of new? And is there a reason to think that, like, Congress might be better to try to figure out how we balance the interests between the federal and the state sovereigns and the interaction that they have? The Supreme Court seems to suggest in the line of cases that you describe, that when we talk about the relationship between different countries, that that strongly suggests to us that that ought to be an issue for Congress and the president, not courts. And my question is, why don't that same type of analysis suggest to us that Congress and not courts ought to be the that, like, try to figure out this sort of cooperative federalism relationship? There is nothing in the 2000 congressional enactment that deals in any way with the suggestion that Congress intended to limit Bivens liability or to do anything in the task force concept. And as counsel just admitted to you, we've had task force in this country long before Congress enacted the 2000 statute. And in all of those cases, we had Bivens liability, as well as concurrent liability of state and local officers. And there'd be no policy reason to do this. These officers are effectuating. So in your view, that treating this sort of like relationship, this cooperative federalism, is literally the same thing as a federal agent enforcing a federal law? No, actually, this is a case where well, not this is a case where they're different, right? I mean, this is help me understand why they're different. This is a state law case involving a state court warrant that was issued in responsibility of a state official, the sheriff to do in response to and is governed under color of state law. There are no federal issues here. This isn't like, this isn't like, there's a federal issue because the federal government has agreed to assist states in violent criminals, right? So Congress has given the marshals the authority. Indeed, one might say the obligation to assist the state sovereigns with like, rounding up and arresting violent criminals, right? So, so yes, you're right. It's all a state issue, except for the fact that the marshals have been instructed to help their sovereign counterparts in rounding up violent criminals, right? So otherwise, like you're right, it's a whole state issue. The only thing that comes into play here is that this is federal government in cooperative federalism, assisting the state government. Well, what it's actually, what that question would suggest then is if this had applied in outside the task force context, that there would be liability for the U.S. Marshall. But when the U.S. Marshall comes in and helps the locals for that very same conduct, there would be no liability whatsoever. Well, I think there might, might well be, we decide cases based on what's before us, but there might well be a different scenario. U.S. Marshalls doesn't enforce very many federal laws. But if there was a statutory authority for the U.S. Marshals to investigate an arrest for violations of federal law, the only one I can really think of are the registration cases. Maybe that's a different scenario, right? So if they were performing a different function, perhaps that's a different scenario. But what we have is the situation we have, which is like a pure cooperative federalism. I would suggest to you that it would be very troublesome if a United States Marshall performing, engaging in excessive force would be held liable if he were not doing it in the task force, but he would be held not liable if he were assisting his fellow officers from the local governments. And in fact, the dichotomy, the unusual thing that it creates here is that if that analysis were applied, you would be creating a zone of immunity on the task force where every task force has, whose state and local has liability for 1983 liability as well as under the state and local tort claims act. But there would be, but their federal counterparts on the task force would have immunity, but they would only or not be liable. And they would only not be liable on those occasions when they were in the task force. But if they were assisting on other joint raids and they were not doing it as part of an established task force, they would not be liable. That's a very slippery slope and one that I don't think the court would go down on. And one that's not supported by this record, by the way, there's nothing in this record that would suggest that what happened here with this task force would quote unquote create a new concept. This was a garden variety arrest warrant, a state arrest warrant for a state crime issued by a state officer, uh, here challenge. And I'll just give you one more chance to answer it. And then you move on and talk about other things, right? When you say that you sort of make the point that it's different, right? It's a state crime. It's a state warrant. It's a state issue. And the federal government has evolved only by virtue of congressional obligation and authority to provide assistance to the state process, right? They're not enforcing federal laws, right? Instead, what they're doing is they're assisting their state counterparts in rounding up violent criminals, right? That's what they're doing. The fact that it is a different sovereign's laws and the federal government is assisting them like feels different than the scenario where you have a DEA agent who's enforcing federal DEA laws. That that's what I'm trying to get at. Do you think that those are the same or do you see that there is a distinction between the two? I don't think there's, I think they're essentially the same. Whether this U. S. Marshall is doing it as part of a task force or whether he's doing it just voluntarily, not all these activities, these joint activities happen with task force. Some of them, they just go out together without being part of a task force. And prior to prior to 2001, they weren't part of the legislation at all. And there is, Carlson said that you have to look at some specific intent by Congress, by creating a remedy or creating some other authorization where Congress intended to take them outside of the ambit of Bivens. There is nothing zero in that. Your view is that absent express congressional indication that they are not subject to Bivens, that we default to them being subject to Bivens? No. But what Carlson has said is that if you're going to rely on some federal appropriate remedy language here, that there's some other remedy available, there must be some indication that Congress intended that as an appropriate substitute. And there's nothing like that here. Since Carlson hasn't the Supreme Court cut back on the idea that we evaluate how sufficient the alternative remedies are? Well, since Carlson, we've had really Ziegler and we've had Egbert, and there have been suggestions. There's been some narrowing of the scope and some suggestions there may be more in the future. Okay. What the court has said in those cases, it's about deterrence, not about the court looking at how sufficient these alternative schemes that created are, right? That it's less about the court evaluating Congress's judgment and more of a default that there is no action unless we see something to the contrary. Well, I think the most specific thing that the court said was in 2017 in Ziegler where we were given that six or seven part test as to what you would analyze, the test that I just recited. And that's the test that trial court applied here. And the trial court applied it very carefully. And in all seven categories, the trial court found specifically that this met the Bivens test, that this was not a new context. And I think it's important based on principles of stare decisis that we rely on not where Bivens might go in the future, but what the courts have said now, what the Supreme Court said actually said in Ziegler, what the Supreme Court actually said in Ziegler and what this court actually said, uh, both in field and in Hicks one. If you rely upon those cases as stare decisis, and those are the governing cases dire too, right? Do we have a case from our court where we found a new context because they were a different federal law enforcement officer operating under a different mandate? That was T. S. A. I think. Yes. But that was an entirely different issue involving national security and T. S. A. We don't have any national security implications here or any T. S. A. Issues. And I think the point was made in one of the opinions in Egbert that there are 82 different federal agencies and the original Bivens agency, the Federal Bureau of Narcotics doesn't even exist anymore. Okay? So if you take that, you'd never look at another federal agency. But this court has said 22 months ago explicitly that the United States Park Service by expanding it to by adding the United States Park Service, it was not a new context. There is no principled way to not apply that. Judge Richardson has pointed out that the United States marshals are not. They're not like other law enforcement officers just enforcing. They're not federal police officers enforcing federal laws in the same way that the park police might be. Well, no, actually, it depends on what function they're performing on when they're performing a garden variety state arrest case. And this was a status. This was an assault case, a domestic violence case, an assault case. And when they are performing that well established what the courts have called quote run of the mill Fourth Amendment excessive force cases, they should be viewed with the standard classic fourth amendment analysis as far as those cases in Bivens. And the case law for Fourth Amendment in Bivens is overwhelmingly, overwhelmingly held that it is not a new context when a federal agency not involved in national security, not involved in immigration or terrorism, but doing a garden variety stop that involves Fourth Amendment excessive force is not an expansion. You have to disagree with the other circuits. Well, I think you have to disagree with your own this court's own holding. Do you agree we'd have to disagree with the other circuits at the 11th and the 10th and the 6th and the 2nd? Well, not with the six because the six decided. Do you agree we'd have to disagree with the 11th and the 10th and the 2nd? Well, certainly that certainly the second they've issued their recent decision. It is a that's that multiple views on that. You'd have to disagree with the majority opinion in that you would have to agree with the 10th. But the Sixth Circuit in Jacobs and the 11th and the 11th. But the Sixth Circuit said in Jacobs, which is still good law despite its subsequent holdings. The Sixth Circuit said that excessive force for United States Marshals in Jacobs is not a new context and found it was there. Yeah, they didn't really address the new category of defendant, maybe because that that hadn't been made explicit by the Supreme Court yet. It didn't appear that the parties disputed that that prong of it. Yeah, but I think you'd have to disagree. You'd have to disagree with your own precedent. You'd have to degree with disagree with this court's holding in Hicks 2, which was just 22 months ago, and you'd have to disagree with the majority opinion in Field, which was even more recently. Which are different, different contexts. I don't think that Hicks 2 is that much different a context. It's a federal agency. They're performing a guard variety stop. It's a Fourth Amendment seizure case. The only difference here is that there was an excessive force allegation. The warrant issue, and just let me address that briefly, as the trial court found the warrant issue, quote, the existence of a warrant is largely incidental. The warrant really has nothing to do, as I think Judge Gregory's questions pointed out, with what happened here. We're not contesting that there was a valid warrant here or that the warrant has any basis in the analysis. Are you contesting that the warrant is what permitted them to break the door down and send the dog in? No. We're not at all. The warrant is just a non-issue here. The issue here is the excessive force. Where this court said in Annapurna Reddy about the warrant issue, it creates a new context where a warrant's being contested and you're challenging the, quote, information gathering and case building activities that represent a different part of the apprehension and detention. And that's not what we're doing here at all. And most of the circuits that have addressed this warrant issue have found that in excessive force cases, the presence or absence of a warrant is irrelevant for Bivens purposes. In the Tenth Circuit, in Logsdon, where the court went in another direction from us, they did hold, though, and this is a 2024 case, that, quote, the existence of a warrant has no legal significance in an excessive force case. And in 2023, the Seventh Circuit in Snowden said, quote, warrant or no warrant, the claims here in Bivens stem from run-of-the-mill allegations of excessive force during a warrant. That was a case where a DEA agent, it's been expanded to DEA, had punched someone while they were serving a warrant in a hotel lobby here. So the warrant here is not an issue here whatsoever. This is effective. This is the same kind of case that you saw in Bivens. This is effectively a federal agent here serving or making an arrest. It's a Fourth Amendment seizure. It's not disputed. It's excessive force. This is classic Bivens. The trial court got it right. This is not a new context. There's no need for any additional analysis. And Congress has not created an alternative remedy here. The only, quote, remedy, the only language that you could rely on from Congress is that, quote, the agency has the authority to manage and discipline its employees. One sentence. That's not enough to create an alternative remedy, nor is the federal court claims that. And I thank the court. Thank you so much, Mr. Maloney. Ms. Casvant, you have some time there. Thank you, Your Honor. I just have three quick points. I want to clarify that the state and local officers that are part of these task forces, when they're deputized to part of the federal task force, they are federal officers. They have their federal hats on. 1983 does not apply. The other thing is, you know, my friend at the bar talked about the long history of the Marshals Service and the fact that Congress has repeatedly legislated in this area. The Supreme Court has told us is another reason to hesitate because Congress hasn't created an individual damages remedy even after repeatedly legislating in this area. And the Sixth Circuit's decision in Jacobs was a pre-Egbert case after Egbert the Sixth Circuit gave us Kane, which found that the marshals were a different task, a different context. If there are no further questions, I would ask the court to reverse. All right. Thank you so much for your arguments. Thank you both. I'll ask the deputy to adjourn the court, sign and die, and then come down and greet counsel.
judges: Roger L. Gregory, Julius N. Richardson, Allison J. Rushing